1  Ari L. Markow, Esq., State Bar No. 186342
2  SPILE, LEFF & GOOR, LLP
   16501 Ventura Boulevard., Suite 610
3  Encino, California 91436
   Telephone Number:   (818) 784-6899
4  Facsimile Number:   (818) 784-0176
5  Email: amarkow@spilelaw.com

6
   Attorneys for Defendant,
7  Alfa Alliance Insurance Corp.

8

```
┌─────────────────────────────────┐
│              FILED              │
│   CLERK, U.S. DISTRICT COURT    │
│                                 │
│         OCT - 3 2013            │
│                                 │
│  CENTRAL DISTRICT OF CALIFORNIA │
│  BY                    DEPUTY   │
└─────────────────────────────────┘
```

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                 WESTERN DIVISION

12

13  REBECCA MOORE and LUPE            CASE NO. CV13-07345 -JAK
14  WELBOURN,                              (PJWx)

15                Plaintiffs,        NOTICE OF REMOVAL

16        vs.                        (Diversity, U.S.C. §§ 1332 & 1441(a))

17  ALFA ALLIANCE INSURANCE          [Declaration of Ari L. Markow in
18  CORP., A VIRGINIA                Support of Notice of Removal filed and
    CORPORATION, AND DOES 1          served concurrently herewith]
19  THROUGH 100, INCLUSIVE,
20                                   [Removed from Superior Court of the
                  Defendants.        State of California for the County of Los
21                                   Angeles, Case No. BS 144882]

22

23      TO THE HONORABLE JUDGES AND THE CLERK OF THE UNITED

24  STATES  DISTRICT  COURT  FOR  THE  CENTRAL  DISTRICT  OF

25  CALIFORNIA,  AND  TO  PLAINTIFFS  REBECCA  MOORE  and  LUPE

26  WELBOURN, AND ITS ATTORNEYS OF RECORD:

27
                                        **BY FAX**
28  /////

---
NOTICE OF REMOVAL

1   PLEASE TAKE NOTICE THAT Defendant Alfa Alliance Insurance Corp.

2   ("Defendant" or "Alfa"), a Virginia corporation, hereby removes this action from

3   the Superior Court of the State of California for the County of Los Angeles to the

4   United States District Court for the Central District of California. This removal is

5   based on diversity of citizenship, pursuant to 28 U.S.C. §§ 1332 and 1441(a). The

6   facts that entitle Alfa to remove this action are as follows:

7   1.   On or about September 6, 2013, Plaintiffs Rebecca Moore and Lupe

8   Welbourn (collectively, "Plaintiffs") filed a Petition to Compel Arbitration (the

9   "Petition") in the Superior Court of the State of California for the County of Los

10   Angeles entitled:   "REBECCA MOORE and LUPE WELLBOURN v. ALFA

11   INSURANCE CORP., a Virginal Corporation and Does 1 through 100," designated

12   as Case No. BS144882. Copies of the Petition and supporting papers submitted by

13   Plaintiffs, as received by Alfa, are attached as Exhibit A to the Declaration of Ari L.

14   Markow ("Markow Decl.").

15   2.   On September 9, 2013, Plaintiffs caused copies of the Petition and

16   supporting papers to be delivered to Alfa's counsel in Encino, California. (Markow

17   Decl Decl., ¶ 2.) Alfa's California counsel was provided with authority to accept

18   service of the Petition on behalf of Alfa. (Id., ¶ 3.) The Petition and supporting

19   papers collectively constitute the initial pleading setting forth the purported claims

20   for relief upon which this action is based and may be removed. No other pleadings

21   were served on Alfa prior to September 9, 2013. (Id., ¶ 3.) Accordingly, this

22   Notice of Removal is being filed within thirty (30) days after Plaintiff purported to

23   serve Alfa with the Petition and is timely filed pursuant to 28 U.S.C. § 1446(b).

24   See Murphy Bros. v. Michetti Pipe Stringing, 526 U.S. 344, 347-348 (1999)

25   (defendant's 30-day period to remove under 28 U.S.C. § 1446(b) is triggered by

26   simultaneous service of the complaint and summons).

27   3.   Alfa is the only defendant identified in the Petition. (Markow Decl., ¶

28   5.)

1

1    4.    Alfa is filing and serving a Notice to Adverse Party of Removal to
2    Federal Court and a Notice to State Court of Removal to Federal Court with the
3    Superior Court of the State of California for the County of Los Angeles. Thus, Alfa
4    is giving notice of this removal to both the adverse party and the state court
5    pursuant to 28 U.S.C. § 1446(d).    (*See* Markow Decl., ¶ 4, Exs. B and C,
6    respectively.)

7    5.    Plaintiff Rebecca Moore is now, and was at the time this action was
8    commenced, a citizen of the State of Tennessee within the meaning of 28 U.S.C. §
9    1332(a). (Markow Decl., ¶ 6.)

10    6.    Plaintiff Lupe Welbourn is now, and was at the time this action was
11    commenced, a citizen of the State of California within the meaning of 28 U.S.C. §
12    1332(a). (Markow Decl., ¶ 7.)

13    7.    Alfa is now, and was at the time this action was commenced, a citizen
14    of the State of Virginia within the meaning of 28 U.S.C. 1332(c)(1), because it is
15    now, and at the time this action was commenced, organized under the laws of the
16    State of Virginia, and its principal place of business was and is in the State of
17    Virginia. (*See Petition*, at caption; See Exhibit "A" *to Declaration of Becky Moore*
18    submitted with *Petition*; Markow Decl., ¶5 )

19    8.    The presence of Doe defendants has no bearing on diversity with
20    respect to removal. *See* 28 U.S.C. § 1441(a) ("for purposes of removal under this
21    Chapter, the citizenship of defendants sued under a fictitious name shall be
22    disregarded") (2005).

23    9.    The amount alleged to be in controversy exceeds the sum of $75,000,
24    exclusive of interest and costs. (*See* Declaration of Becky Moore, submitted with
25    Petition, at ¶ 8 thereof, Plaintiff Becky Moore alleges that her damages "exceed
26    $200,000.00").

27    10.    Because there is complete diversity between Plaintiffs and the
28    Defendant, and because the amount alleged to be in controversy exceeds the sum of

LEGAL_US_E # 85380570.2                           -2-

1   $75,000, exclusive of interest and costs, the requirements for removal under 28

2   U.S.C. §§ 1332(a) and 1441(a) are satisfied.

3        WHEREFORE, Defendant removes to this Court the above-entitled action

4   now pending in the Superior Court of the State of California for the County of Los

5   Angeles.

6

7   DATED:   October 3, 2013          SPILE, LEFF & GOOR, LLP

8

9                          By:   _____

10                                ARI L. MARKOW, ESQ.

10                                Attorneys for Defendant, ALFA ALLIANCE

11                                INSURANCE CORP.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit A

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| LAURENCE H. MANDELL, ESQ. (SBN 82415)<br>THE MANDELL LAW FIRM<br>19400 Business Center Drive, Suite 102<br>Northridge, California 91324<br><br>TELEPHONE NO.: (818) 886-6600    FAX NO. *(Optional)*: (818) 772-9739<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: Plaintiffs | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES |
|---|
| STREET ADDRESS: 111 N. Hill Street |
| MAILING ADDRESS: 111 N. Hill Street |
| CITY AND ZIP CODE: Los Angeles, CA 90012 |
| BRANCH NAME: CENTRAL DISTRICT |

| PLAINTIFF/PETITIONER: REBECCA M. MOORE; LUPE WELBOURN |
|---|
| DEFENDANT/RESPONDENT: ALFA ALLIANCE INSURANCE CORP. |

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>BS144882 |
|---|---|

TO *(insert name of party being served):* <u>ALFA ALLIANCE INSURANCE CORP.</u>

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: September 9, 2013

LAURENCE H. MANDELL
(TYPE OR PRINT NAME)                    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*

1. ☐ A copy of the summons and of the complaint.
2. ☒ Other: *(specify):* Petition to Compel Arbitration; Memorandum of Points and Authorities; Declaration of Becky Moore; Civil Case Cover Sheet; Civil Case Cover Sheet Addendum and Statement of Location; Notice of Case Assignment; Voluntary Efficient Litigation Stipulations

*(To be completed by recipient):* September 27, 2013
Date this form is signed:

Ari L. Markow
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,        (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                        ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005]    NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL    Legal Solutions Plus    Code of Civil Procedure,<br>§§ 415.30, 417.10

4

# FACSIMILE

## SPILE, LEFF & GOOR, LLP

### *Attorneys at Law*

Encino Executive Plaza
16501 Ventura Blvd, Suite 610
Encino, California 91436
Telephone   (818) 784-6899
Facsimile   (818) 784-0176
Email: counsel@spile-siegal.com

| | |
|---|---|
| DATE: | September 27, 2013 |
| ATTENTION: | Laurence Mandell, Esq. |
| | The Mandell Law Firm |
| FACSIMILE NUMBER: | (818) 772-9739 |
| TELEPHONE NUMBER: | (818) 886-6600 |

| | |
|---|---|
| From: | Ari L. Markow, Esq. |
| Re: | *Becky Moore and Lupe Welborn, et al. vs. Alfa Alliance Insurance Company* |

TOTAL NUMBER OF PAGES:     2

## MESSAGE

Signed Notice and Acknowledgment of Receipt, to follow.

IF YOU DO NOT RECEIVE ALL THE PAGES INDICATED, PLEASE CALL BACK AS SOON AS POSSIBLE AT (818) 784-6899. This transmission is intended only for the use of the individual or entity to which it is addressed and may contain information which is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message at the above address via US Postal Service. Thank You.

MEMORY TRANSMISSION REPORT

```
                              TIME     : 09-27-2013  10:15AM
                              TEL NUMBER :
                              NAME     :
```

```
FILE NUMBER        :  355

DATE               :  09-27  10:14AM

TO                 :  18187729739

DOCUMENT PAGES     :  002

START TIME         :  09-27  10:14AM

END TIME           :  09-27  10:15AM

SENT PAGES         :  002

STATUS             :  OK

FILE NUMBER    : 355       *** SUCCESSFUL TX NOTICE ***
```

# FACSIMILE

**SPILE, LEFF & GOOR, LLP**
*Attorneys at Law*
Encino Executive Plaza
16501 Ventura Blvd. Suite 610
Encino, California 91436
Telephone    (818) 784-6899
Facsimile    (818) 784-0176
Email: counsel@spile-siegal.com

| | |
|---|---|
| **DATE:** | September 27, 2013 |
| **ATTENTION:** | Laurence Mandell, Esq. |
| | The Mandell Law Firm |
| **FACSIMILE NUMBER:** | (818) 772-9739 |
| **TELEPHONE NUMBER:** | (818) 886-6600 |
| **From:** | Ari L. Markow, Esq. |
| **Re:** | *Becky Moore and Lupe Welborn, et al. vs. Alfa Alliance Insurance Company* |
| **TOTAL NUMBER OF PAGES:** | 2 |

## MESSAGE

Signed Notice and Acknowledgment of Receipt, to follow.

IF YOU DO NOT RECEIVE ALL THE PAGES INDICATED, PLEASE CALL BACK AS SOON AS POSSIBLE AT (818) 784-6899.  This transmission is intended only for the use of the individual or entity to which it is addressed and may contain information which is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately by telephone and return the original message at the above address via US Postal Service.  Thank You.

POS-015

| | FOR COURT USE ONLY |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>LAURENCE H. MANDELL, ESQ. (SBN 82415)<br>THE MANDELL LAW FIRM<br>19400 Business Center Drive, Suite 102<br>Northridge, California 91324<br><br>TELEPHONE NO.: (818) 886-6600   FAX NO. *(Optional)*: (818) 772-9739<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: Plaintiffs | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: CENTRAL DISTRICT

PLAINTIFF/PETITIONER: REBECCA M. MOORE; LUPE WELBOURN

DEFENDANT/RESPONDENT: ALFA ALLIANCE INSURANCE CORP.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>BS144882 |
|---|---|

TO *(insert name of party being served)*: <u>ALFA ALLIANCE INSURANCE CORP.</u>

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: September 9, 2013

LAURENCE H. MANDELL
_____   _____
(TYPE OR PRINT NAME)                (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing)*:

1. ☐ A copy of the summons and of the complaint.
2. ☒ Other: *(specify)*: Petition to Compel Arbitration; Memorandum of Points and Authorities; Declaration of Becky Moore; Civil Case Cover Sheet; Civil Case Cover Sheet Addendum and Statement of Location; Notice of Case Assignment; Voluntary Efficient Litigation Stipulations

*(To be completed by recipient)*:
Date this form is signed:

▶

_____   _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,   (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                   ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Legal<br>Solutions<br>Plus | Code of Civil Procedure,<br>§§ 415.30, 417.10 |
|---|---|---|---|

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| LAURENCE H. MANDELL, ESQ. (SBN 82415)<br>THE MANDELL LAW FIRM<br>19400 Business Center Drive, Suite 102<br>Northridge, CA 91324<br><br>TELEPHONE NO.: (818)886-6600    FAX NO.:<br>ATTORNEY FOR *(Name):* | CONFORMED COPY<br>ORIGINAL FILED<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES<br><br>SEP 06 2013<br><br>John A. Clarke, Executive Officer/Clerk<br>By Amber Hayes, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: CENTRAL DISTRICT

| CASE NAME: REBECCA MOORE and LUPE WELBOURN v. ALFA ALLIANCE INSURANCE CORP. | |
|---|---|

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: BS144882 |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

**Auto Tort**
[X] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve   in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* 0
5. This case [ ] is [X] is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: September   , 2013
LAURENCE H. MANDELL, ESQ. (SBN 82415)
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Legal Solutions Plus | Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10 |

| SHORT TITLE: REBECCA MOORE and LUPE WELBOURN v. ALFA ALLIANCE INSURANCE CORP. | CASE NUMBER BS144882 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☐ YES CLASS ACTION? ☐ YES LIMITED CASE? ☐ YES TIME ESTIMATED FOR TRIAL _____ ☐ HOURS/ ☐ DAYS

**Item II.** Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check <u>one</u> Superior Court type of action in Column B below which best describes the nature of this case.

**Step 3:** In Column C, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | [X] A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., (4.) |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 2. |
| | | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

| LACIV 109 (Rev. 03/11) LASC Approved 03-04 | CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION | Local Rule 2.0 Page 1 of 4 |
|---|---|---|

LA-CV109

| SHORT TITLE: REBECCA MOORE and LUPE WELBOURN v. ALFA ALLIANCE INSURANCE CORP. | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050 Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109 Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019 Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012 Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009 Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031 Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation    Number of parcels _____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032 Quiet Title | 2., 6. |
| | | ☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 2 of 4

| SHORT TITLE: REBECCA MOORE and LUPE WELBOURN v. ALFA ALLIANCE INSURANCE CORP. | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

| SHORT TITLE: REBECCA MOORE and LUPE WELBOURN v. ALFA ALLIANCE INSURANCE CORP. | CASE NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☐1. ☐2. ☐3.☒ 4.☐5.☐6. ☐7. ☐8.☐9.☐10. | ADDRESS: I-5 Golden State Freeway near the intersection with the 118 Freeway |
|---|---|
| CITY:<br>San Fernando | STATE:<br>CA | ZIP CODE: |

**Item IV.** *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the ____Stanley Mosk____ courthouse in the ____Central____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: September 5, 2013

(SIGNATURE OF ATTORNEY/FILING PARTY)

LAURENCE H. MANDELL

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev. 03/11)          **CIVIL CASE COVER SHEET ADDENDUM**          Local Rule 2.0
LASC Approved 03-04          **AND STATEMENT OF LOCATION**          Page 4 of 4

12

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE (NON–CLASS ACTION)**

Case Number _____                    B S 1 4 4 8 8 2

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 3.3(c)).  There is additional information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM | |
|---|---|---|---|---|---|---|
| Hon. Daniel Buckley | 1 | 534 | Hon. Michael Johnson | 56 | 514 | |
| Hon. Barbara A. Meiers | 12 | 636 | Hon. Ralph W. Dau | 57 | 517 | |
| Hon. Terry A. Green | 14 | 300 | Hon. Rolf M. Treu | 58 | 516 | |
| Hon. Richard Fruin | 15 | 307 | Hon. Michael L. Stern | 62 | 600 | |
| Hon. Rita Miller | 16 | 309 | Hon. Mark Mooney | 68 | 617 | |
| Hon. Richard E. Rico | 17 | 309 | Hon. William F. Fahey | 69 | 621 | |
| Hon. Kevin C. Brazile | 20 | 310 | Hon. Soussan G. Bruguera | 71 | 729 | |
| Hon. Robert L. Hess | 24 | 314 | Hon. Ruth Ann Kwan | 72 | 731 | |
| Hon. Mary Ann Murphy | 25 | 317 | Hon. Teresa Sanchez-Gordon | 74 | 735 | |
| Hon. Yvette M. Palazuelos | 28 | 318 | | | | |
| Hon. Barbara Scheper | 30 | 400 | | | | |
| Hon. Mary H. Strobel | 32 | 406 | **Hon. Emilie H. Elias** | **324** | **CCW** | |
| Hon. Maureen Duffy-Lewis | 38 | 412 | **Hon. Elihu M. Berle*** | **323** | **CCW** | |
| Hon. Michelle R. Rosenblatt | 40 | 414 | OTHER | | | |
| Hon. Ronald M. Sohigian | 41 | 417 | | | | |
| Hon. Holly E. Kendig | 42 | 416 | | | | |
| Hon. Mel Red Recana | 45 | 529 | | | | |
| Hon. Debre Katz Weintraub | 47 | 507 | | | | |
| Hon. Elizabeth Allen White | 48 | 506 | | | | |
| Hon. Deirdre Hill | 49 | 509 | | | | |
| Hon. John L. Segal | 50 | 508 | | | | |
| Hon. Abraham Khan | 51 | 511 | | | | |
| Hon. Susan Bryant-Deason | 52 | 510 | | | | |
| Hon. Steven J. Kleifield | 53 | 513 | | | | |
| Hon. Ernest M. Hiroshige | 54 | 512 | | | | |
| Hon. Malcolm H. Mackey | 55 | 515 | | | | |

**\*Complex**
All cases designated as complex (other than class actions) are initially assigned to Judge Elihu M. Berle in Department 323 of the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005).  This assignment is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400.  Depending on the outcome of that assessment, the case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____      JOHN A. CLARKE, Executive Officer/Clerk

LACIV CCH 190 (Rev. 01/12)                    **NOTICE OF CASE ASSIGNMENT –**                    Page 1 of 2
LASC Approved  05-06
For Optional Use                              **UNLIMITED CIVIL CASE**

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.  Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lasuperiorcourt.org** under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____           ► _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)
Date:

_____           ► _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)
Date:

_____           ► _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)
Date:

_____           ► _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)
Date:

_____           ► _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)
Date:

_____           ► _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)
Date:

_____           ► _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

LACIV 229 (new)
LASC Approved 04/11      **STIPULATION – EARLY ORGANIZATIONAL MEETING**      Page 2 of 2

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – DISCOVERY RESOLUTION** | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

iii.   Be filed within two (2) court days of receipt of the Request; and

iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c.   No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.   If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e.   If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.   If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.   The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.   Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.   Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.   References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   - ☐ Request for Informal Discovery Conference
   - ☐ Answer to Request for Informal Discovery Conference
2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).
3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).
4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>FAX NO. (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____ )

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____ )

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____ )

**THE COURT SO ORDERS.**

Date: _____

_____
JUDICIAL OFFICER

LACIV 075 (new)
LASC Approved 04/11

**STIPULATION AND ORDER – MOTIONS IN LIMINE**

Page 2 of 2

LAURENCE H. MANDELL, ESQ. (SBN: 82415)
THE MANDELL LAW FIRM
19400 Business Center Drive, Suite 102
Northridge, California 91324
(818) 886-6600

Attorneys for Petitioner BECKY MOORE and LUPE WELBOURN

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

SEP 06 2013

John A. Clarke, Executive Officer/Clerk
By Amber Hayes, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

BS144882

| | |
|---|---|
| REBECCA MOORE and LUPE WELBOURN, | CASE NO. |
| Petitioners, | PETITION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF BECKY MOORE |
| v. | |
| ALFA ALLIANCE INSURANCE CORP., a Virginia Corporation, and DOES 1 through 100, inclusive, | (Filed Concurrently With Proposed Order) |
| Respondents. | DATE: 11/5/13 DUCW TIME: 1:30 PM DEPT: 20 |

Petitioners REBECCA MOORE and LUPE WELBOURN allege:

1.    Petitioner REBECCA MOORE purchased automobile liability insurance from Respondent ALFA ALLIANCE INSURANCE CORP. This included uninsured and underinsured motorist benefits. The effective date of the policy was from July 20, 2010 to July 20, 2011. Attached hereto as Exhibit "A" and incorporated herein by reference is a true and correct copy of the Declarations page from such policy. Attached hereto as Exhibit "B" and incorporated herein by reference is a true and correct copy of the policy itself.

2.    The insurance agreement was brokered between MS. MOORE, a resident of California and her agent in the state of her former residence, in Tennessee. The agent, Greg

1

PETITION TO COMPEL ARBITRATION

Schealf, was a licensed insurance broker in the State of Tennessee, operating under the names KNOXVILLE INSURANCE GROUP and GREG SCHEALF INSURANCE. The policy was issued to cover MS. MOORE's 2004 Lexus automobile as well as other vehicles.

3.     On October 26, 2010, Petitioner MOORE, and her passenger and co-petitioner, LUPE WELBOURN, were injured in a motor vehicle accident in California. They sustained serious injuries which were not compensated by the underlying auto insurance of minimal limits. Despite a timely claim for the underinsured motorist benefits under the Alfa Alliance policy, Respondent refuses to properly compensate nor arbitrate the matter.

4.     Pursuant to Insurance Code Section 11580.2, Petitioner and Respondent are required to arbitrate any controversy arising out of or related to the contract. A controversy has arisen as to Respondent's responsibility under the underinsured motorist provisions of this policy, but Respondent refuses to submit this matter to arbitration. A copy of Petitioner's demand for arbitration is attached hereto as Exhibit "C" and incorporated herein by reference. A copy of Respondent's denial of arbitration is attached hereto as Exhibit "D" and incorporated herein by reference.

5.     Petitioner has not waived her right to compel arbitration, and does not know of any grounds that would permit revocation of this agreement.

WHEREFORE, Petitioner requests that:

1.     The court issue an order compelling the arbitration of this dispute and appointing a neutral arbitrator;

2.     Petitioner be awarded costs of suit;

3.     Petitioner be awarded such other and further relief as this this court deems just and proper.

Dated: September 5, 2013                THE MANDELL LAW FIRM

By: _____
    LAURENCE H. MANDELL, ESQ.
    Attorney for Petitioners
    REBECCA MOORE and
    LUPE WELBOURN

PETITION TO COMPEL ARBITRATION

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.    INTRODUCTION

This action arises from a two car automobile accident of October 26, 2010. Petitioners were driving their 2004 Lexus northbound on the 5 Freeway close to its intersection with the 118 Freeway when their vehicle was violently rear-ended by a 2002 Nissan driven by Martha Eliza Artiga Flores. Attached hereto as Exhibit "E" and incorporated herein by reference is a true and correct copy of the Police Report.

Petitioners suffered severe injuries in this collision. Ms. Moore's medical bills exceed $200,000. MS. MOORE and MS. WELBOURN settled with the insurer for MS. FLORES for policy limits of $15,000, and then requested underinsured motorist benefits from MS. MOORE's personal insurer, ALFA ALLIANCE INSURANCE CORP. (hereinafter "ALFA.") ALFA has denied payment of such benefits. Thereafter, MS. MOORE and MS. WELBOURN demanded arbitration of this dispute, and ALFA has refused to engage in arbitration, claiming it is not obligated under the contract to submit this matter to arbitration. The contract provides that both parties may agree to arbitrate any uninsured motorist disputes, but ALFA refuses to agree to submit this matter to arbitration, in an ill-concealed attempt force Petitioners to file a lawsuit which will inevitably be expensive and time consuming. California law imposes a duty to arbitrate all underinsured motorist claims. Thus, Petitioners petition this court for an order compelling arbitration of the underinsured benefits coverage issues.

### 2.    THIS COURT MAY COMPEL ARBITRATION
###        OF THE ISSUES OF LIABILITY AND DAMAGES

Code of Civil Procedure Section 1281.2 provides that the court <u>shall</u> order the petitioner and respondent to arbitrate this controversy if it determines that an agreement to arbitration exists. In the instant case, the contract upon which this claim is based provides that the parties may agree to arbitration, but does not require it. However, California law imposes a duty to arbitrate these disputes by operation of law, as set forth below.

## A. California Law Governs This Claim

A motor vehicle insurance policy issued outside of California to residents who had moved to California is subject to California's uninsured motorist laws as embodied in section 11580.2 of the Insurance Code. Modglin v. State Farm Mutual Automobile (1969) 273 Cal. App. 2d 693, 699. Thus, even though the subject insurance policy was issued by a Virginia corporation to a California resident by a Tennessee broker, California law applies. This is especially true where the insurance company knew that the insureds had moved to California, intended to take up permanent residence in that state, and would be operating that vehicle in California. Id. at 700.

The underlying accident occurred in California, the policy was owned by a California Resident, and the agent knew that the policy owner was a California resident by virtue of the fact that she informed him on numerous occasions that she was renting out her Tennessee home, moving the California to enroll her son in acting classes and the local high school, operating the vehicle in California, principally garaging her vehicle in California, and generally doing all that was necessary to take up permanent residency in California. [Declaration of Becky Moore, Par. 10.]

Indeed, the broker was well aware of Ms. Moore's change in residence because he sent correspondence to her California home to advise her he had modified her homeowner's policy for the Tennessee residence to add fire insurance to accommodate the rental status of the property. Attached as Exhibit "F" and incorporated herein by reference is a true and correct copy of said correspondence. [Decl. of Becky Moore, Par. 10.]    ALFA knew that Ms. Moore was living in California by virtue of the fact that it sent correspondence to her in California. Attached hereto as Exhibit "G" and incorporated herein by reference is a copy of correspondence from ALFA to her California address. [Decl. of Becky Moore, Par. 10.] Thus, under the rubric of Modglin and related cases, California law applies to the subject policy, and this incident is governed by Insurance Code Section 11580.2.

///

///

PETITION TO COMPEL ARBITRATION

**B.    California Law Requires Arbitration of These Disputes.**

Insurance Code Section 11580.2(f) requires arbitration of disputes between insurers and insureds to resolve the insured's right to recover on underinsurance claim and the amount to be recovered. See also, Quintano v. Mercury Casualty Co. (1995) 11 Cal. 4th 1049, 1053. Insurance Code § 11580.2, subd. (f) states that an automobile liability insurance policy shall provide that the determination as to whether the insured shall be legally entitled to recover damages shall be made by agreement between the insured and the insurer or, in the event of disagreement, by arbitration. [Emphasis added.] The purpose was to minimize cost to both the insurer and insured, and to remove these disputes from an already over-burdened court system. Pilimai v. Farmers Ins. Exch. (2006) 39 Cal. 4th 133, 140.

An insurance policy is governed by the relevant statutory law in force at the time the policy is issued and that such provisions are read into the policy and become part of the contract applies to Insurance Code Section 11580.2. Modglin, supra, at 698. In fact, the policy itself states that the procedural rules of the state where the vehicle is garaged will govern. [Exhibit "B," P. 7.] By parity of reasoning and factual similarity to the Mogdlin case, California law should apply in the instant case to require arbitration and extend underinsured motorist coverage to Petitioners. California courts have acknowledged a strong legislative policy in enforcing arbitration of uninsured/underinsured motorist claims. See Jordan v. Pacific Auto. Ins. Co., (1965) 232 Cal. App. 2d 127.

**C.    Petitioner Has Underinsured Motorist Coverage By Operation of Law.**

In California, uninsured motorist coverage acts as underinsured motorist coverage. Insurance Code Section 11580.2(n) provides: [u]nderinsured motorist coverage shall be offered with limits equal to the limits of liability for the insured's uninsured motorist limits in the underlying policy, and may be offered with limits in excess of the uninsured motorist coverage. For the purposes of this section, uninsured and underinsured motorist coverage shall be offered as a single coverage. . . ." Section (p)(7) provides: "[u]nderinsured motorist coverage shall be included in all policies of bodily injury liability insurance providing uninsured motorist coverage issued or renewed on or after July 1, 1985."

1    The definition of "uninsured motor vehicle" includes any vehicle which is an

2  "underinsured motor vehicle." An underinsured motor vehicle is one to which an insurance

3  policy applies at the time of the accident but its limit for liability is less than the limit of

4  liability for the injured party's coverage. Wedemeyer v. Safeco Ins. Co. of America (2008)

5  160 Cal. App. 4th 1297, 1303.

6    In the instant case, MS. MOORE purchased uninsured motorist coverage. MS.

7  MOORE's uninsured motorist coverage, as demonstrated by the Declarations page attached

8  as Exhibit "A," has policy limits for uninsured motorist coverage of $100,000. Since

9  uninsured motorist coverage acts as underinsured motorist coverage in California, she is

10  entitled to the balance of the $100,000 available under the policy and California law.

11    **D.    Public Policy Favors Arbitration of Uninsured and Underinsured**

12    **Motorist Coverage Disputes**

13    California's statutory requirement of arbitration in underinsured/uninsured motorist

14  cases is based on the express legislative intent to provide a speedy and inexpensive method

15  of resolving these disputes and to remove the burden from the court system. Pilimai, supra,

16  at 138. The California Supreme Court has ruled that public policy strongly favors the

17  enforcement of arbitration provisions in a contract. Moncharsh v. Heily & Blase (1992) 3

18  Cal. 4th 1, 2.

19  **3.    CONCLUSION**

20    Based on the foregoing, Petitioners REBECCA MOORE and LUPE WELBOURN

21  respectfully request an order of this court compelling arbitration of this matter and selecting

22  a neutral arbitrator to determine all issues herein.

23

24  Dated: September 5, 2013          **THE MANDELL LAW FIRM**

25

26    By: _____

27          LAURENCE H. MANDELL, ESQ.
              Attorney for Petitioners
28          REBECCA MOORE and
              LUPE WELBOURN

PETITION TO COMPEL ARBITRATION

### DECLARATION OF BECKY MOORE

I, BECKY MOORE, declare:

1.    I am the Petitioner in the within action.  I am over the age of 18 years, and make this Declaration from facts within my own knowledge and if called as a witness, I am competent to and would testify as follows:

2.    Attached hereto as Exhibit "A" and incorporated herein by reference is a true and correct copy of the Declarations Page from the contract of insurance between Petitioner and Respondent.

3.    Attached hereto as Exhibit "B" and incorporated herein by reference is a true and correct copy of the Policy of Insurance which is the subject of this Petition.

4.    Attached hereto as Exhibit "C" and incorporated herein by reference is a true and correct copy of the demand for arbitration from my counsel dated May 1, 2013.

5.    Attached hereto as Exhibit "D" and incorporated herein by reference is a true and correct copy of the denial of arbitration from Respondent dated July 19, 2013.

6.    Attached hereto as Exhibit "E" and incorporated herein by reference is a true and correct copy of the police report from my accident of October 26, 2010.

7.    This action arises from a two car automobile accident of October 26, 2010. On that date, I was driving my passenger, Lupe Welbourn, in my 2004 Lexus northbound on the 5 Freeway close to its intersection with the 118 Freeway my their vehicle was violently rear-ended by a 2002 Nissan driven by Martha Eliza Artiga Flores.

8.    Both myself and my passenger suffered severe injuries in this collision.  My medical expenses exceed $200,000.00.  We settled with the insurer for MS. FLORES for policy limits of $15,000, and then requested underinsured motorist benefits from my personal insurer, ALFA ALLIANCE INSURANCE CORP.

9.    ALFA has refused to engage in arbitration, claiming it is not obligated under the contract to submit this matter to arbitration.

10.    The policy which is the subject of this Petition was issued by a Virginia corporation to a California resident by a Tennessee broker.  The accident occurred in

1  California, the policy was owned by a California Resident, and Greg Schealf, my insurance
2  agent, knew that I was a California resident by virtue of the fact that I informed him on
3  numerous occasions after January 2010 that I was renting out my Tennessee home, moving
4  the California to enroll my son in acting classes and the local high school, operating the 2004
5  Lexus vehicle in California, principally garaging my vehicle in California, all with the
6  intention of taking up permanent residency in California.  Mr. Schealf sent correspondence
7  to my California address which modified my homeowner's policy for the Tennessee
8  residence to allow for fire insurance to accommodate the rental status of the property.
9  Attached as Exhibit "F" and incorporated herein by reference is a true and correct copy of
10 said correspondence dated June 27, 2010 2010, 4 months before the accident in question.
11 ALFA INSURANCE knew that I was living in California, as demonstrated by the fact that
12 it sent correspondence to me in California.  Attached hereto as Exhibit "G" and incorporated
13 herein by reference is a copy of correspondence from ALFA to my California address dated
14 June 22, 2010, 4 months before the accident in question.

15       I declare under penalty of perjury under the laws of the State of California that the
16 foregoing is true and correct.

17       Executed this _29_ day of _August_____, 2013 Northridge, California.

18

19

20                                         BECKY MOORE

21

22

23

24

25

26

27

28

PETITION TO COMPEL ARBITRATION

EXHIBIT "A"



**Alfa Alliance Insurance Corp.**
4480 Cox Road
Glen Allen, Virginia   23060-6718

**PERSONAL AUTO DECLARATION**

| Policy Number | Policy Period | |
|---|---|---|
| | From | To |
| PAT 0006226 03 | 07/20/2010 | 07/20/2011 |
| | 12:01 A.M. Standard Time | |

| Transaction |
|---|

**RENEWAL DECLARATION**

This Declarations page replaces all previously issued Declarations.

| Named Insured and Address | Agent |
|---|---|
| MOORE, BECKY<br>11420 HICKORY SPRINGS DR<br>KNOXVILLE, TN 37932-0000 | GREG SCEALF INSURANCE<br>8609 KINGSTON PIKE, SUITE 201<br>KNOXVILLE, TN 37923<br><br>Telephone:  865-694-9788             7270000 |

DESCRIPTION OF COVERED VEHICLES, LIMITS OF LIABILITY AND PREMIUMS CHARGED. COVERAGE IS ONLY PROVIDED WHERE A PREMIUM AND LIMIT OF LIABILITY IS SHOWN. THE VEHICLES ARE PRINCIPALLY GARAGED AT THE INSURED'S ADDRESS UNLESS STATED BELOW:

| | VEHICLE 1 | VEHICLE 2 | VEHICLE 3 | VEHICLE |
|---|---|---|---|---|
| MAKE | MAZD | TYTA | GMC | |
| MODEL | RX-8 COUPE 4D | CAMRY COUPE 2 | 1500 | |
| YEAR | 2004 | 1994 | 1993 | |
| LAST 9 DIGITS of VIN | 440109570 | XRU030627 | 8T1517469 | |
| SYMBOL | 20 | 17 | | |
| RATING CLASS | 252130 | 252230 | 252130 | |
| STATE / TERRITORY | TN    147 | TN    147 | TN    147 | |
| DRIVER | 99 | 01 | 99 | |
| POINTS | 0 | 0 | | |

| COVERAGE | LIMIT OF LIABILITY | DED | PREMIUM | DED | PREMIUM | DED | PREMIUM | DED | PREMIUM |
|---|---|---|---|---|---|---|---|---|---|
| Bodily Injury Each Person | 100,000 | | 140.00 | | 137.00 | | 131.00 | | |
| Bodily Injury Each Accident | 300,000 | | | | | | | | |
| Property Damage Each Accident | 50,000 | | 95.00 | | 92.00 | | 88.00 | | |
| Medical Payments Each Person | 2,000 | | 8.00 | | 7.00 | | 10.00 | | |
| Uninsured Motorists BI Each Person | 100,000 | | 69.00 | | 69.00 | | 69.00 | | |
| Uninsured Motorists BI Each Accident | 300,000 | | | | | | | | |
| Uninsured Motorists PD Each Accident | 50,000 | | 19.00 | | 19.00 | | 19.00 | | |
| Other than Collision | | 500 | 50.00 | | | | | | |
| Collision | | 500 | 200.00 | | | | | | |
| Towing and Labor per Disablement | 50 | | 7.00 | | | | | | |
| Optional Limits Trans Expense | 20 | | 14.00 | | | | | | |

| VEHICLE PREMIUM TOTAL | | | $    602.00 | | $    324.00 | | $    317.00 | | |
|---|---|---|---|---|---|---|---|---|---|
| POLICY PREMIUM TOTAL | | | | | | | | $   1,243.00 | |

Your Premium Has Been Reduced By The Following Discounts:
Passive Restraint Discount
Safe Driver Discount
Account Discount



Issued Date: 05/27/2010            INSURED COPY
NC0006 0904      AC7270000    1005262037PAT000622603            Page 1   of 4

EXHIBIT "B"

PERSONAL AUTO
PP 00 01 01 05

## PERSONAL AUTO POLICY

### AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

### DEFINITIONS

A. Throughout this policy, "you" and "your" refer to:
   1. The "named insured" shown in the Declarations; and
   2. The spouse if a resident of the same household.

   If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered "you" and "your" under this policy but only until the earlier of:
   1. The end of 90 days following the spouse's change of residency;
   2. The effective date of another policy listing the spouse as a named insured; or
   3. The end of the policy period.

B. "We", "us" and "our" refer to the Company providing this insurance.

C. For purposes of this policy, a private passenger type auto, pickup or van shall be deemed to be owned by a person if leased:
   1. Under a written agreement to that person; and
   2. For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks when used.

D. "Bodily injury" means bodily harm, sickness or disease, including death that results.

E. "Business" includes trade, profession or occupation.

F. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

G. "Occupying" means:
   1. In;
   2. Upon; or
   3. Getting in, on, out or off.

H. "Property damage" means physical injury to, destruction of or loss of use of tangible property.

I. "Trailer" means a vehicle designed to be pulled by a:
   1. Private passenger auto; or
   2. Pickup or van.

   It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

J. "Your covered auto" means:
   1. Any vehicle shown in the Declarations.
   2. A "newly acquired auto".
   3. Any "trailer" you own.
   4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:
      a. Breakdown;
      b. Repair;
      c. Servicing;
      d. Loss; or
      e. Destruction.

   This Provision (J.4.) does not apply to Coverage For Damage To Your Auto.

K. "Newly acquired auto":
   1. "Newly acquired auto" means any of the following types of vehicles you become the owner of during the policy period:
      a. A private passenger auto; or
      b. A pickup or van, for which no other insurance policy provides coverage, that:
         (1) Has a Gross Vehicle Weight Rating of 10,000 lbs. or less; and
         (2) Is not used for the delivery or transportation of goods and materials unless such use is:
            (a) Incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

PP 00 01 01 05      Copyright, ISO Properties, Inc., 2003      Page 1 of 12
INSURED COPY
AC7270000  1005262037PAT000622603
UNIFORM

(b) For farming or ranching.

2. Coverage for a "newly acquired auto" is provided as described below. If you ask us to insure a "newly acquired auto" after a specified time period described below has elapsed, any coverage we provide for a "newly acquired auto" will begin at the time you request the coverage.

a. For any coverage provided in this policy except Coverage For Damage To Your Auto, a "newly acquired auto" will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner. However, for this coverage to apply to a "newly acquired auto" which is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 14 days after you become the owner.

If a "newly acquired auto" replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

b. Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

(1) 14 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

(2) Four days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", a Collision deductible of $500 will apply.

c. Other Than Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

(1) 14 days after you become the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

(2) Four days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", an Other Than Collision deductible of $500 will apply.

---

## PART A - LIABILITY COVERAGE

INSURING AGREEMENT

A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured". We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

B. "Insured" as used in this Part means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer".

2. Any person using "your covered auto".

3. For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4. For any auto or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This Provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer".

SUPPLEMENTARY PAYMENTS

We will pay on behalf of an "insured":

1. Up to $250 for the cost of bail bonds required because of an accident, including re-

Copyright, ISO Properties, Inc., 2003
INSURED COPY
AC7270000  1005262037PAT000622603

PP 00 01 01 05

lated traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

4. Up to $200 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

5. Other reasonable expenses incurred at our request.

These payments will not reduce the limit of liability.

EXCLUSIONS

A. We do not provide Liability Coverage for any "insured":

1. Who intentionally causes "bodily injury" or "property damage".

2. For "property damage" to property owned or being transported by that "insured".

3. For "property damage" to property:

   a. Rented to;
   b. Used by; or
   c. In the care of;

   that "insured".

   This Exclusion (A.3.) does not apply to "property damage" to a residence or private garage.

4. For "bodily injury" to an employee of that "insured" during the course of employment. This Exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This Exclusion (A.5.) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the "business" of:

   a. Selling;
   b. Repairing;
   c. Servicing;
   d. Storing; or
   e. Parking;

vehicles designed for use mainly on public highways. This includes road testing and delivery. This Exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:

   a. You;
   b. Any "family member"; or
   c. Any partner, agent or employee of you or any "family member".

7. Maintaining or using any vehicle while that "insured" is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion A.6.

   This Exclusion (A.7.) does not apply to the maintenance or use of a:

   a. Private passenger auto;
   b. Pickup or van; or
   c. "Trailer" used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (A.8.) does not apply to a "family member" using "your covered auto" which is owned by you.

9. For "bodily injury" or "property damage" for which that "insured":

   a. Is an insured under a nuclear energy liability policy; or
   b. Would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

   A nuclear energy liability policy is a policy issued by any of the following or their successors:

   a. Nuclear Energy Liability Insurance Association;
   b. Mutual Atomic Energy Liability Underwriters; or
   c. Nuclear Insurance Association of Canada.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any vehicle which:

   a. Has fewer than four wheels; or
   b. Is designed mainly for use off public roads.

   This Exclusion (B.1.) does not apply:

   a. While such vehicle is being used by an "insured" in a medical emergency;
   b. To any "trailer"; or
   c. To any non-owned golf cart.

PP 00 01 01 05

Copyright, ISO Properties, Inc., 2003
INSURED COPY
AC7270000   1005262057PAT000622603

Page 3 of 12

2. Any vehicle, other than "your covered auto", which is:

   a. Owned by you; or

   b. Furnished or available for your regular use.

3. Any vehicle, other than "your covered auto", which is:

   a. Owned by any "family member"; or

   b. Furnished or available for the regular use of any "family member".

   However, this Exclusion (B.3.) does not apply to you while you are maintaining or "occupying" any vehicle which is:

   a. Owned by a "family member"; or

   b. Furnished or available for the regular use of a "family member".

4. Any vehicle, located inside a facility designed for racing, for the purpose of:

   a. Competing in; or

   b. Practicing or preparing for;

   any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident.

This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part B or Part C of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any other collectible insurance.

## PART B - MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

A. We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury":

1. Caused by accident; and

2. Sustained by an "insured".

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

B. "Insured" as used in this Part means:

1. You or any "family member":

   a. While "occupying"; or

   b. As a pedestrian when struck by;

   a motor vehicle designed for use mainly on public roads or a trailer of any type.

2. Any other person while "occupying" "your covered auto".

Copyright, ISO Properties, Inc., 2003
INSURED COPY
AC7270000   1005262037PAT000622603

PP 00 01 01 05

EXCLUSIONS

We do not provide Medical Payments Coverage for any "insured" for "bodily injury":

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.

2. Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion (2.) does not apply to a share-the-expense car pool.

3. Sustained while "occupying" any vehicle located for use as a residence or premises.

4. Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury".

5. Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

   a. Owned by you; or

   b. Furnished or available for your regular use.

6. Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

   a. Owned by any "family member"; or

   b. Furnished or available for the regular use of any "family member".

   However, this Exclusion (6.) does not apply to you.

7. Sustained while "occupying" a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (7.) does not apply to a "family member" using "your covered auto" which is owned by you.

8. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured". This Exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:

   a. Private passenger auto;

   b. Pickup or van; or

   c. "Trailer" used with a vehicle described in a. or b. above.

9. Caused by or as a consequence of:

   a. Discharge of a nuclear weapon (even if accidental);

   b. War (declared or undeclared);

   c. Civil war;

   d. Insurrection; or

   e. Rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

    a. Nuclear reaction;

    b. Radiation; or

    c. Radioactive contamination.

11. Sustained while "occupying" any vehicle located inside a facility designed for racing, for the purpose of:

    a. Competing in; or

    b. Practicing or preparing for;

    any prearranged or organized racing or speed contest.

LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

   1. "Insureds";

   2. Claims made;

   3. Vehicles or premiums shown in the Declarations; or

   4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

   1. Part A or Part C of this policy; or

   2. Any Underinsured Motorists Coverage provided by this policy.

OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

---

## PART C - UNINSURED MOTORISTS COVERAGE

INSURING AGREEMENT

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

Copyright, ISO Properties, Inc., 2003
INSURED COPY
AC7270000   1005262037PAT000622603

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this Part means:

1. You or any "family member".

2. Any other person "occupying" "your covered auto".

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in **1.** or **2.** above.

C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

   a. You or any "family member";

   b. A vehicle which you or any "family member" are "occupying"; or

   c. "Your covered auto".

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. Denies coverage; or

   b. Is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member".

2. Owned or operated by a self-insurer under any applicable motor vehicle law; except a self-insurer which is or becomes insolvent.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

1. By an "insured" while "occupying", or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By any "family member" while "occupying", or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

B. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured":

1. If that "insured" or the legal representative settles the "bodily injury" claim and such settlement prejudices our right to recover payment.

2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion (B.2.) does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (B.3.) does not apply to a "family member" using "your covered auto" which is owned by you.

C. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

D. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

Copyright, ISO Properties, Inc., 2003
INSURED COPY
AC7270000  1005262037PAT000622603
PP 00 01 01 05

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

   1. Part A or Part B of this policy; or .

   2. Any Underinsured Motorists Coverage provided by this policy.

C. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

D. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

   1. Workers' compensation law; or

   2. Disability benefits law.

OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy:

   1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

   2. Any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any collectible insurance providing such coverage on a primary basis.

   3. If the coverage under this policy is provided:

      a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

      b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

ARBITRATION

A. If we and an "insured" do not agree:

   1. Whether that "insured" is legally entitled to recover damages; or

   2. As to the amount of damages which are recoverable by that "insured";

   from the owner or operator of an "uninsured motor vehicle", then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

   Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

   1. Pay the expenses it incurs; and

   2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding as to:

   1. Whether the "insured" is legally entitled to recover damages; and

   2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

---

## PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

INSURING AGREEMENT

A. We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment, minus any applicable deductible shown in the Declarations. If loss to more than one "your covered auto" or "non-owned auto" results from the same "collision", only the highest applicable deductible will apply. We will pay for loss to "your covered auto" caused by:

   1. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

PP 00 01 01 05

Copyright, ISO Properties, Inc., 2003
INSURED COPY
AC7270000  1005262037PAT000622603

Page 7 of 12

2. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

B. "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision":

1. Missiles or falling objects;
2. Fire;
3. Theft or larceny;
4. Explosion or earthquake;
5. Windstorm;
6. Hail, water or flood;
7. Malicious mischief or vandalism;
8. Riot or civil commotion;
9. Contact with bird or animal; or
10. Breakage of glass.

If breakage of glass is caused by a "collision", you may elect to have it considered a loss caused by "collision".

C. "Non-owned auto" means:

1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or
2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:
   a. Breakdown;
   b. Repair;
   c. Servicing;
   d. Loss; or
   e. Destruction.

TRANSPORTATION EXPENSES

A. In addition, we will pay, without application of a deductible, up to a maximum of $600 for:

1. Temporary transportation expenses not exceeding $20 per day incurred by you in the event of a loss to "your covered auto". We will pay for such expenses if the loss is caused by:

   a. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.
   b. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

2. Expenses for which you become legally responsible in the event of loss to a "non-owned auto". We will pay for such expenses if the loss is caused by:

   a. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for any "your covered auto".
   b. "Collision" only if the Declarations indicate that Collision Coverage is provided for any "your covered auto".

   However, the most we will pay for any expenses for loss of use is $20 per day.

B. Subject to the provisions of Paragraph A., if the loss is caused by:

1. A total theft of "your covered auto" or a "non-owned auto", we will pay only expenses incurred during the period:

   a. Beginning 48 hours after the theft; and
   b. Ending when "your covered auto" or the "non-owned auto" is returned to use or we pay for its loss.

2. Other than theft of a "your covered auto" or a "non-owned auto", we will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours.

Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto".

EXCLUSIONS

We will not pay for:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This Exclusion (1.) does not apply to a share-the-expense car pool.

2. Damage due and confined to:

   a. Wear and tear;
   b. Freezing;
   c. Mechanical or electrical breakdown or failure; or
   d. Road damage to tires.

   This Exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto".

Copyright, ISO Properties, Inc., 2003
INSURED COPY
AC7270000    10052620 37PAT000622603

PP 00 01 01 05

3. Loss due to or as a consequence of:
   a. Radioactive contamination;
   b. Discharge of any nuclear weapon (even if accidental);
   c. War (declared or undeclared);
   d. Civil war;
   e. Insurrection; or
   f. Rebellion or revolution.

4. Loss to any electronic equipment that reproduces, receives or transmits audio, visual or data signals. This includes but is not limited to:
   a. Radios and stereos;
   b. Tape decks;
   c. Compact disk systems;
   d. Navigation systems;
   e. Internet access systems;
   f. Personal computers;
   g. Video entertainment systems;
   h. Telephones;
   i. Televisions;
   j. Two-way mobile radios;
   k. Scanners; or
   l. Citizens band radios.

   This Exclusion (4.) does not apply to electronic equipment that is permanently installed in "your covered auto" or any "non-owned auto".

5. Loss to tapes, records, disks or other media used with equipment described in Exclusion 4.

6. A total loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities.

   This Exclusion (6.) does not apply to the interests of Loss Payees in "your covered auto".

7. Loss to:
   a. A "trailer", camper body, or motor home, which is not shown in the Declarations; or
   b. Facilities or equipment used with such "trailer", camper body or motor home. Facilities or equipment include but are not limited to:
      (1) Cooking, dining, plumbing or refrigeration facilities;
      (2) Awnings or cabanas; or
      (3) Any other facilities or equipment used with a "trailer", camper body, or motor home.

This Exclusion (7.) does not apply to a:
a. "Trailer", and its facilities or equipment, which you do not own; or
b. "Trailer", camper body, or the facilities or equipment in or attached to the "trailer" or camper body, which you:
   (1) Acquire during the policy period; and
   (2) Ask us to insure within 14 days after you become the owner.

8. Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

9. Loss to equipment designed or used for the detection or location of radar or laser.

10. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:
    a. Special carpeting or insulation;
    b. Furniture or bars;
    c. Height-extending roofs; or
    d. Custom murals, paintings or other decals or graphics.

    This Exclusion (10.) does not apply to a cap, cover or bedliner in or upon any "your covered auto" which is a pickup.

11. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:
    a. Selling;
    b. Repairing;
    c. Servicing;
    d. Storing; or
    e. Parking;
    vehicles designed for use on public highways. This includes road testing and delivery.

12. Loss to "your covered auto" or any "non-owned auto", located inside a facility designed for racing, for the purpose of:
    a. Competing in; or
    b. Practicing or preparing for;
    any prearranged or organized racing or speed contest.

13. Loss to, or loss of use of, a "non-owned auto" rented by:
    a. You; or
    b. Any "family member";

PP 00 01 01 05

Copyright, ISO Properties, Inc., 2003
INSURED COPY
AC7270000   1005262037PAT000622603

if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "family member", pursuant to the provisions of any applicable rental agreement or state law.

## LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:

   1. Actual cash value of the stolen or damaged property; or

   2. Amount necessary to repair or replace the property with other property of like kind and quality.

   However, the most we will pay for loss to:

   1. Any "non-owned auto" which is a trailer is $1500.

   2. Electronic equipment that reproduces, receives or transmits audio, visual or data signals, which is permanently installed in the auto in locations not used by the auto manufacturer for installation of such equipment, is $1,000.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

   1. You; or

   2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

   1. Any coverage provided by the owner of the "non-owned auto";

   2. Any other applicable physical damage insurance;

   3. Any other source of recovery applicable to the loss.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   1. Pay its chosen appraiser; and

   2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

---

## PART E - DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

   1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

   2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

   3. Submit, as often as we reasonably require:

      a. To physical exams by physicians we select. We will pay for these exams.

      b. To examination under oath and subscribe the same.

   4. Authorize us to obtain:

      a. Medical reports; and

      b. Other pertinent records.

   5. Submit a proof of loss when required by us.

C. A person seeking Uninsured Motorists Coverage must also:

---

Page 10 of 12

Copyright, ISO Properties, Inc., 2003
INSURED COPY
AC7270000   1005262037PAT000622603

PP 00 01 01 05

1. Promptly notify the police if a hit-and-run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

D. A person seeking Coverage For Damage To Your Auto must also:

1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

---

## PART F - GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

### CHANGES

A. This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;

2. Operators using insured vehicles;

3. The place of principal garaging of insured vehicles;

4. Coverage, deductible or limits.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This Paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

### FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

### LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

1. We agree in writing that the "insured" has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured".

### OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

However, our rights in this Paragraph (A.) do not apply under Part D, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

### POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

B. The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

---

PP 00 01 01 05                 Copyright, ISO Properties, Inc., 2003                 Page 11 of 12
INSURED COPY
AC7270000   1005262037PAT000622603

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

### A. Cancellation

This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:
   a. Returning this policy to us; or
   b. Giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:
   a. At least 10 days notice:
      (1) If cancellation is for nonpayment of premium; or
      (2) If notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or
   b. At least 20 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:
   a. For nonpayment of premium; or
   b. If your driver's license or that of:
      (1) Any driver who lives with you; or
      (2) Any driver who customarily uses "your covered auto";
      has been suspended or revoked. This must have occurred:
      (1) During the policy period; or
      (2) Since the last anniversary of the original effective date if the policy period is other than 1 year; or
   c. If the policy was obtained through material misrepresentation.

### B. Nonrenewal

If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period. Subject to this notice requirement, if the policy period is:

1. Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

2. 6 months or longer, but less than one year, we will have the right not to renew or continue this policy at the end of the policy period.

3. 1 year or longer, we will have the right not to renew or continue this policy at each anniversary of its original effective date.

### C. Automatic Termination

If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

### D. Other Termination Provisions

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

A. Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto".

B. Coverage will only be provided until the end of the policy period.

## TWO OR MORE AUTO POLICIES

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

Copyright, ISO Properties, Inc., 2003
INSURED COPY
AC7270000  1005262037PAT000622603

PP 00 01 01 05

EXHIBIT "C"

Laurence H. Mandell*
Robert J. Mandell*
* A Law Corporation

——— THE ———
M A N D E L L
——— L A W   F I R M ———

Mara E. J. Burnett
Aslin Tutuyan

May 1, 2013

Via Facsimile [(866) 344-1285]
and e-mail asilverthorne@alfaaic.com,
Original Mailed Certified Mail Return Receipt Requested

Alfa Alliance Insurance Company
P.O. Box 2460
Glen Allen, Virginia 23058

ATTENTION:  Angela Silverthorne

Re:   Our Clients:     Becky Moore and Lupe Welbourn
      Your Insured:    Becky Moore
      Date of Loss:    October 26, 2010
      Your Claim No.:  50248

Dear Ms. Silverthorne:

As you know this office represents Rebecca Moore and Lupe Wellbourn pursuant to Ms. Moore's **underinsurance** coverage with your company.

Your offers of $10,000 for each claimant respectively is hereby rejected. We find these "nuisance value" offers unacceptable and made in bad faith.

Your company has attempted to mislead your insured that she did not promptly notify your company of the claim (Alfa was notified June 1, 2011) and that your insured prejudiced your right to recovery when truth and in fact this is an underinsurance motorist claim and there is no right to recover payment.

In accordance with Uninsured Motorist Coverage "**Arbitration**" Part C, we hereby request arbitration.

Very truly yours,

THE MANDELL LAW FIRM

LAURENCE H. MANDELL

LHM/jav
Enclosures

19400 Business Center Dr., Suite 102 • Northridge, CA 91324 • Telephone (818) 886-6600 • Facsimile (818) 772-9739

EXHIBIT "D"

07-19-2013   10:27AM   FROM-                                                      T-397   P.003/003   F-083

# SPILE, LEFF & GOOR, LLP
### ATTORNEYS AT LAW

LOS ANGELES OFFICE

RIVERSIDE, SAN DIEGO & SAN BERNARDINO

41995 4th Street, Suite 310b
Temecula, CA 92590
Telephone (951) 699-0370

16501 VENTURA BLVD., SUITE 610
ENCINO, CALIFORNIA 91436-2072
Telephone (818) 784-6899 Facsimile (818) 784-0176
Email: counsel@spilelaw.com   www.spilelaw.com



July 19, 2013

**VIA FACSIMILE AND US MAIL:**

Laurence Mandell, Esq.
The Mandell Law Firm
19400 Business Center Drive, Suite 102
Northride, CA 91324

Fax: 818-772-9739

Re:   **Moore, et al. v. Alfa Alliance Insurance Company**
**Los Angeles County Superior Court Case No: Not Applicable**

Dear Laurence:

Thank you for your letter of July 16, 2013. I also appreciate you taking the time yesterday to discuss matters raised in your letter.

As I mentioned during our call yesterday, given the holding in Ahern v. Dillenback (1991) 1 Cal.App.4th 36, it is our position that the cases cited in your letter do not apply to the instant situation. As discussed in Ahern v. Dillenback and expressly stated in California Insurance Code Section 11580.2(a), the reach of California Insurance Code Section 11580.2 et seq. is limited to, "policies (1) 'issued or delivered' in California or (2) covering motor vehicles that are 'then' principally used or principally garaged in this state." Ahern v. Dillenback , supra at 44.

Based on the above-referenced controlling legal precedent, the requirements of California Insurance Code Section 11580.2 have been determined to apply only to automobile policies "issued or delivered in California  with respect to vehicles that were principally used of principally garaged in California when the policy issued.   Morever, California Insurance Code Section 11580.2 benefits are not required where the insured's policy was issued or delivered out of state and/or the insured's vehicle was not kept in California when the policy issued.

Based on the records we have, it is our understanding that the policy at issue was issued from Virginia and delivered to your client, Becky Moore, at her then residence address in Knoxville, Tennessee at a time when your client actually resided in Tennessee and the vehicle at issue was located in and registered in Tennessee.  As such, it follows that, per the legal precedent established by Ahern v. Dillenback (1991) 1 Cal.App.4th 36, the provisions of California Insurance Code Section 11580.2 that concern arbitration of disputes do not apply to the instant matter. If you disagree, kindly provide us with legal precedent to support your position so that we may consider same.

Laurence Mandell, Esq.
Moore v. Alfa
July 19, 2013
Page 2

In light of the above, we also direct you to the express language of the policy at issue which expressly states at page 7 thereof that, "both parties must agree to arbitrate."

Additionally, we are in the process of determining whether the holding in Ahern v. Dillenback (1991) 1 Cal.App.4th 36 supports a position that your clients have no claims at all with respect to underinsured motorist coverage under the policy at issue. Our current reasoning is based upon the legal precedent set by the holding in Ahern v. Dillenback (1991) 1 Cal.App.4th 36 and the California Legislature's actual declarations found in California Insurance Code Section 11580.05. Again, if you have any legal precedent which confirms that California Insurance Code Section 11580.2 applies in any manner to the insurance policy at issue, please provide same at your earliest convenience so that we may evaluate same. Once we complete our review of this particular issue, we will update you regarding same.

In sum, we must continue to deny your request for arbitration unless and until we receive on point legal precedent from you which confirms that the precedent set by the holding in Ahern v. Dillenback (1991) 1 Cal.App.4th 36 does not apply to the instant matter and our client is obligated to arbitrate your clients' claims.

Nothing contained herein, or omitted herefrom, shall be deemed an admission of any fact, or a waiver of any rights or remedies. All rights and remedies are expressly reserved. This letter is not intended as a full recitation of all facts or issues.

In the meantime, should you have any questions, please do not hesitate to contact me.

Very truly yours,

SPILE, LEFF & GOOR LLP

Ari L. Markow, Esq.

wpfiles\cases\hg13003\letter2 to plaintiff re arb.

EXHIBIT "E"

STATE OF CALIFORNIA
# TRAFFIC COLLISION REPORT
CHP 555 Page 1 (Rev. 11-06) OPI 065

Page 1 of 10

| SPECIAL CONDITIONS | NUMBER INJURED | HIT & RUN FELONY | CITY | JUDICIAL DISTRICT | LOCAL REPORT NUMBER |
|---|---|---|---|---|---|
| | 1 | | SAN FERNANDO | SAN FERNANDO | 2010·10·0372 |
| | NUMBER KILLED | HIT & RUN MISDEMEANOR | COUNTY | REPORTING DISTRICT | BEAT | DAY OF WEEK | TOW AWAY |
| | 0 | | LOS ANGELES | | | S M T W T F S | ☐ YES ☒ NO |

### LOCATION

| COLLISION OCCURRED ON | MO. DAY YEAR | TIME (2400) | NCIC # | OFFICER I.D. |
|---|---|---|---|---|
| I-5 N/B "GOLDEN STATE FREEWAY" | 10-26-2010 | 1650 | 9575 | 23030 |

| MILEPOST INFORMATION | GPS COORDINATES | PHOTOGRAPHS BY: ☒ NONE |
|---|---|---|
| FEET/MILES OF | LATITUDE 34.26472 LONGITUDE 118.44147 | |

| ☐ AT INTERSECTION WITH | STATE HWY REL |
| ☒ OR: 500 FEET/MILES N OF SHELDON ST | ☒ YES ☐ NO |

### PARTY 1

| DRIVERS LICENSE NUMBER | STATE | CLASS | AIR BAG | SAFETY EQUIP. | VEH. YEAR | MAKE/MODEL/COLOR | LICENSE NUMBER | STATE |
|---|---|---|---|---|---|---|---|---|
| F1588624 (NO GUN) | CA | U | M | G | 2002 | NISSAN/ALTIMA/SILV | 6DDL268 | CA |

☒ DRIVER / PEDESTRIAN

| NAME (FIRST, MIDDLE, LAST) | | OWNER'S NAME | ☒ SAME AS DRIVER |
|---|---|---|---|
| MARTHA ELIZA ARTIGA FLORES | | | |

| STREET ADDRESS | OWNER'S ADDRESS | ☒ SAME AS DRIVER |
|---|---|---|
| 14047 HERON ST | | |

| CITY/STATE/ZIP | DISPOSITION OF VEHICLE ON ORDERS OF: ☐ OFFICER ☒ DRIVER ☐ OTHER |
|---|---|
| SYLMAR CA 91342 | FLED SCENE |

| SEX F | HAIR BRN | EYES BRN | HEIGHT 5-01 | WEIGHT 125 | BIRTHDATE Mo 01 Day 03 Year 1952 | RACE H | PRIOR MECHANICAL DEFECTS: ☒ NONE APPARENT ☐ REFER TO NARRATIVE |

| HOME PHONE | BUSINESS PHONE | VEHICLE IDENTIFICATION NUMBER: |
|---|---|---|
| (818) 700-3778 | NONE | |

| INSURANCE CARRIER | POLICY NUMBER | VEHICLE TYPE | DESCRIBE VEHICLE DAMAGE | SHADE IN DAMAGED AREA |
|---|---|---|---|---|
| ACCESS INS. | ACAD01758878 | 01 | ☒ UNK. ☐ NONE ☐ MINOR ☐ MOD. ☐ MAJOR ☐ ROLL-OVER | |

| DIR OF TRAVEL | ON STREET OR HIGHWAY | SPEED LIMIT | CA ____ DOT ____ |
|---|---|---|---|
| N | I-5 | 55 | CAL-T ____ TCP/PSC ____ MC/MX ____ |

### PARTY 2

| DRIVERS LICENSE NUMBER | STATE | CLASS | AIR BAG | SAFETY EQUIP. | VEH. YEAR | MAKE/MODEL/COLOR | LICENSE NUMBER | STATE |
|---|---|---|---|---|---|---|---|---|
| 04654 0760 | TN | F | M | G | 2004 | LEXUS/ES330/BLK | 8ET-3DT | TN |

☒ DRIVER / PEDESTRIAN

| NAME (FIRST, MIDDLE, LAST) | | OWNER'S NAME | ☒ SAME AS DRIVER |
|---|---|---|---|
| REBECCA MINTURN MOORE | | | |

| STREET ADDRESS | OWNER'S ADDRESS | ☐ SAME AS DRIVER KNOXVILLE |
|---|---|---|
| 1921 N. BUENA VISTA #301 | 11420 HICKORY SPRINGS DR TN 37937 | |

| CITY/STATE/ZIP | DISPOSITION OF VEHICLE ON ORDERS OF: ☐ OFFICER ☒ DRIVER ☐ OTHER |
|---|---|
| BURBANK CA 91504 | DRIVEN AWAY |

| SEX F | HAIR BLN | EYES HZL | HEIGHT 5-68 | WEIGHT 150 | BIRTHDATE Mo 07 Day 18 Year 1958 | RACE W | PRIOR MECHANICAL DEFECTS: ☒ NONE APPARENT ☐ REFER TO NARRATIVE |

| HOME PHONE | BUSINESS PHONE | VEHICLE IDENTIFICATION NUMBER: |
|---|---|---|
| 818-423-2585 | NONE | |

| INSURANCE CARRIER | POLICY NUMBER | VEHICLE TYPE | DESCRIBE VEHICLE DAMAGE | SHADE IN DAMAGED AREA |
|---|---|---|---|---|
| ALFA ALLIANCE | 0006226 03 | 01 | ☐ UNK. ☐ NONE ☒ MINOR ☐ MOD. ☐ MAJOR ☐ ROLL-OVER | |

| DIR OF TRAVEL | ON STREET OR HIGHWAY | SPEED LIMIT | CA ____ DOT ____ |
|---|---|---|---|
| N | I-5 | 65 | CAL-T ____ TCP/PSC ____ MC/MX ____ |

### PARTY 3

| DRIVERS LICENSE NUMBER | STATE | CLASS | AIR BAG | SAFETY EQUIP. | VEH. YEAR | MAKE/MODEL/COLOR | LICENSE NUMBER | STATE |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

☐ DRIVER / PEDESTRIAN

| NAME (FIRST, MIDDLE, LAST) | | OWNER'S NAME | ☐ SAME AS DRIVER |
|---|---|---|---|
| | | | |

| STREET ADDRESS | OWNER'S ADDRESS | ☐ SAME AS DRIVER |
|---|---|---|
| | | |

| CITY/STATE/ZIP | DISPOSITION OF VEHICLE ON ORDERS OF: ☐ OFFICER ☐ DRIVER ☐ OTHER |
|---|---|

| SEX | HAIR | EYES | HEIGHT | WEIGHT | BIRTHDATE Mo Day Year | RACE | PRIOR MECHANICAL DEFECTS: ☐ NONE APPARENT ☐ REFER TO NARRATIVE |

| HOME PHONE | BUSINESS PHONE | VEHICLE IDENTIFICATION NUMBER: |
|---|---|---|

| INSURANCE CARRIER | POLICY NUMBER | VEHICLE TYPE | DESCRIBE VEHICLE DAMAGE | SHADE IN DAMAGED AREA |
|---|---|---|---|---|
| | | | ☐ UNK. ☐ NONE ☐ MINOR ☐ MOD. ☐ MAJOR ☐ ROLL-OVER | |

| DIR OF TRAVEL | ON STREET OR HIGHWAY | SPEED LIMIT | CA ____ DOT ____ |
|---|---|---|---|
| | | | CAL-T ____ TCP/PSC ____ MC/MX ____ |

| PREPARER'S NAME | DISPATCH NOTIFIED | REVIEWER'S NAME | DATE REVIEWED |
|---|---|---|---|
| GALISTIAN 20030 | ☐ YES ☐ NO ☒ N/A | 53 | |

STATE OF CALIFORNIA
# INJURED / WITNESS / PASSENGERS
CHP 555 Page 3 (Rev. 1-03) OPI 061

Page 3 of 10

| DATE OF COLLISION (MO. DAY YEAR) | TIME (2400) | NCIC # | OFFICER I.D. | NUMBER |
|---|---|---|---|---|
| 10-26-2010 | 1655 | 9575 | 20030 | 2010-10-0378 |

| WITNESS ONLY | PASSENGER ONLY | AGE | SEX | EXTENT OF INJURY ("X" ONE) | | | | INJURED WAS ("X" ONE) | | | | | PARTY NUMBER | SEAT POS. | AIR BAG | SAFETY EQUIP. | EJECTED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | FATAL INJURY | SEVERE INJURY | OTHER VISIBLE INJURY | COMPLAINT OF PAIN | DRIVER | PASS. | PED. | BICYCLIST | OTHER | | | | | |
| # | | 60 | F | ☐ | ☐ | ☐ | ☒ | ☐ | ☒ | ☐ | ☐ | ☐ | 2 | 3 | M | G | O |

NAME / D. O. B. / ADDRESS: UPE WELBOURN/09-30-1950/9916 HANNA AVE., CHATSWORTH, CA 91311    TELEPHONE 818-341-5U34

(INJURED ONLY) TRANSPORTED BY: SEEK OWN LIB    TAKEN TO: N/A

DESCRIBE INJURIES: COMPLAINT OF PAIN TO NECK, BACK AND SHOULDER

☐ VICTIM OF VIOLENT CRIME NOTIFIED

| # | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

NAME / D. O. B. / ADDRESS    TELEPHONE

(INJURED ONLY) TRANSPORTED BY:    TAKEN TO:

DESCRIBE INJURIES

☐ VICTIM OF VIOLENT CRIME NOTIFIED

| # | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

NAME / D. O. B. / ADDRESS    TELEPHONE

(INJURED ONLY) TRANSPORTED BY:    TAKEN TO:

DESCRIBE INJURIES

☐ VICTIM OF VIOLENT CRIME NOTIFIED

| # | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

NAME / D. O. B. / ADDRESS    TELEPHONE

(INJURED ONLY) TRANSPORTED BY:    TAKEN TO:

DESCRIBE INJURIES

☐ VICTIM OF VIOLENT CRIME NOTIFIED

| # | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

NAME / D. O. B. / ADDRESS    TELEPHONE

(INJURED ONLY) TRANSPORTED BY:    TAKEN TO:

DESCRIBE INJURIES

☐ VICTIM OF VIOLENT CRIME NOTIFIED

| # | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

NAME / D. O. B. / ADDRESS    TELEPHONE

(INJURED ONLY) TRANSPORTED BY:    TAKEN TO:

DESCRIBE INJURIES

☐ VICTIM OF VIOLENT CRIME NOTIFIED

| PREPARER'S NAME | I.D. NUMBER | MO. DAY YEAR | REVIEWER'S NAME | MO. DAY YEAR |
|---|---|---|---|---|
| EGGLESTON | 20030 | 11/06/2010 | 54 | |

STATE OF CALIFORNIA
SKETCH DIAGRAM
CHP 555 Page 4(Rev. 8-97) OPI 042

PAGE 4 OF 10

| DATE OF INCIDENT | TIME | NCIC NUMBER | OFFICER I.D. | NUMBER |
|---|---|---|---|---|
| 10/26/2010 | 1650 | 9575 | 020030 | 2010-10-0372 |

ALL MEASUREMENTS ARE APPROXIMATE AND NOT TO SCALE UNLESS STATED (SCALE=          )

Sketch

Not to
Scale

# I-5 N/B (GOLDEN STATE FWY)

N
W ◄◆► E
S



CONCRETE
CENTER DIVIDER

SOLID WHITE
LINE

BROKEN WHITE
LINES

SOLID WHITE
LINE

RAISED
ASPHALT CURB

SHELDON ST.

ASPHALT
SHOULDER

| PREPARED BY | I.D. NUMBER | DATE | REVIEWER'S NAME | DATE |
|---|---|---|---|---|
| A. S. EGGLESTON | 020030 | 10/26/2010 | | |

STATE OF CALIFORNIA
FACTUAL DIAGRAM
CHP 555 Page 4(Rev. 8-97) OPI 042

PAGE 5 OF 10

| DATE OF INCIDENT | TIME | NCIC NUMBER | OFFICER I.D. | NUMBER |
|---|---|---|---|---|
| 10/26/2010 | 1650 | 9575 | 020030 | 2010-10-0372 |

ALL MEASUREMENTS ARE APPROXIMATE AND NOT TO SCALE UNLESS STATED (SCALE=        )

Factual Diagram Not to Scale

# I-5 N/B (GOLDEN STATE FWY)



| PREPARED BY | I.D. NUMBER | DATE | REVIEWER'S NAME | DATE |
|---|---|---|---|---|
| A. S. EGGLESTON | 020030 | 10/26/2010 | | |

56

STATE OF CALIFORNIA
NARRATIVE/SUPPLEMENTAL                                    PAGE 6 OF 10

| DATE OF INCIDENT | TIME | NCIC NUMBER | OFFICER I.D. | NUMBER |
|---|---|---|---|---|
| 10/26/2010 | 1650 | 9575 | 020030 | 2010-10-0372 |

1  FACTS:

2  NOTIFICATION:

3  I was dispatched to a call of a traffic collision at 1655 hours. I responded from SR-118 at I-210

4  and arrived on scene at 1703 hours. All times, speeds, and measurements are approximate.

5  Measurements were taken by visual estimation except where otherwise indicated.

6

7  HIT AND RUN:

8  Party #1 (Flores) fled from the scene in Vehicle #1 (Nissan) immediately following this collision.

9  P-1 was subsequently identified.

10

11  Party #2 (Moore) related that the vehicle which hit her vehicle was a black Honda with a CA

12  License plate of 6DDL628. P-2 was able to describe the driver of the vehicle as a dark haired

13  female. P-2 related that she looked into her rear view mirror and watched as V-1 collided into the

14  rear of her vehicle. After the collision P-2 attempted to exit the freeway but the other involved

15  vehicle did not show intent to stop, as it sped off. The fleeing vehicle continued north on I-5

16  northbound and P-2 followed until just south of Mission Blvd. where she exited the freeway.

17

18  Upon completion of my interview with P-2, I then traveled to the home of the registered owner of

19  the vehicle that P-2 claimed struck her vehicle. A check with CHP dispatch on the license plate

20  that P-2 provided revealed the registered owner to be Martha Flores, with an address of 14042

21  Heron St., Sylmar, CA 91342. Later that day I stopped at the address of the registered owner of

22  V-1 and I contacted a relative of Martha Flores. Martha Flores was not home at the time and

23  information was left for her to contact me. I was contacted later that day by a Mr. Frank Garcia,

24  who was representing Mrs. Flores due to her only speaking Spanish. Mr. Garcia related that

25  Martha Flores was involved in the traffic collision, unlicensed and that her CA ID# was F1588624.

26  The vehicle was covered under Access Insurance, Policy # ACAD01738778. The vehicle was

27  taken to a body shop before I was able to view the damage related to this incident.

28  -Due to the statement of Mrs. Flores, I was able to place her as Party #1.

| PREPARED BY | I.D. NUMBER | DATE | REVIEWER'S NAME | DATE |
|---|---|---|---|---|
| A. S. EGGLESTON | 020030 | 10/26/2010 | | |

STATE OF CALIFORNIA
NARRATIVE/SUPPLEMENTAL                                          PAGE 7 OF 10

| DATE OF INCIDENT | TIME | NCIC NUMBER | OFFICER I.D. | NUMBER |
|---|---|---|---|---|
| 10/26/2010 | 1650 | 9575 | 020030 | 2010-10-0372 |

1 <u>SCENE:</u>

2 At the scene of this collision, I-5 northbound consists of 4 lanes.  The individual lanes are

3 separated by raised ceramic markers and painted white lines. The lanes are constructed of

4 portland concrete and bordered by an asphalt shoulder to the east and west.  The roadway is

5 relatively straight and level with no visual obstructions present.  Weather conditions at the time

6 were clear and dry.  See factual diagram for further details of scene.

7

8

9 <u>PARTIES:</u>

10 Party #1 (Flores) fled from the scene in Vehicle #1 (Nissan) and was contacted on 10/28/2010

11 by phone (translation by Mr. Frank Garcia).  Flores was identified by a check through dispatch, on

12 the license plate number identified by P-2.  Flores was placed as a party by the following:

13

14 - personal statements

15 - being the registered owner of V-1.

16

17 Party #2 (Moore) was located at the Mobil gas station at San Fernando Mission Blvd. and Laurel

18 Canyon Blvd.  Moore was identified at the gas station by a valid California driver's license.  Moore

19 was placed as a party by the following:

20

21 - personal statements

22 - passenger's statement

23 - being the registered owner of V-2.

24

25 Vehicle #2 (Lexus) was located at the Mobil gas station at San Fernando Mission Blvd. and

26 Laurel Canyon Blvd.  Vehicle #2 sustained minor rear end damage due to this collision.  The right

27 rear bumper was damaged.

28

| PREPARED BY | I.D. NUMBER | DATE | REVIEWER'S NAME | DATE |
|---|---|---|---|---|
| A. S. EGGLESTON | 020030 | 10/26/2010 | | |

59

STATE OF CALIFORNIA                                               PAGE 8 OF 10
NARRATIVE/SUPPLEMENTAL

| DATE OF INCIDENT | TIME | NCIC NUMBER | OFFICER I.D. | NUMBER |
|---|---|---|---|---|
| 10/26/2010 | 1650 | 9575 | 020030 | 2010-10-0372 |

1  PHYSICAL EVIDENCE:

2  None

3

4  OTHER FACTUAL INFORMATION:

5  Party #1 (Flores) was driving without a valid driver's license.  Her license status is none issued.

6

7  STATEMENTS:

8  Party #1 (Flores) was contacted on 10/28/2010 by phone (translation by Mr. Frank Garcia) and

9  related in essence the following: I was driving northbound on I-5 in the #3 lane at 45 mph. I

10  attempted to make a lane change to the #4 lane but another vehicle took the lane.  I veered back

11  into the #3 lane as the vehicle in front of me slowed down dramatically.  I couldn't stop and my

12  vehicle collided with the car in front of me.  After the collision I tried to follow the car in front of me

13  off the freeway, but was unable to do so because of traffic.  I got off as soon as I could, at

14  Osborne St.  I waited on Osborne St. until a Caucasian man contacted me, but I was unable to

15  communicate with him because he only spoke English.  He returned to his vehicle and left, and I

16  left shortly after he did.

17

18  Party #2 (Moore) was contacted at the Mobil gas station and stated: "I was driving northbound on

19  I-5 in the #3 lane at 35 to 40 mph and was slowing with traffic.  I looked in my rearview mirror and

20  noticed a vehicle driving in my lane attempt to change lanes to the #4 lane.  She was not able to

21  change lanes, because the #4 lane was occupied by another vehicle.  The vehicle then came

22  back into the #3 lane and couldn't stop before hitting me.  I do not remember hearing screeching

23  brakes or seeing the vehicle's front end dip, as if to suggest the vehicle was decelerating rapidly.  I

24  tried to exit off with the vehicle that hit me, but as I merged to the right to get off the vehicle that hit

25  me sped off.  I then got behind the vehicle that hit me and followed it until I was able to have my

26  passenger write down the license plate.  We then exited off the I-5 northbound at Mission Blvd.,

27  where we called for assistance."

28

| PREPARED BY | I.D. NUMBER | DATE | REVIEWER'S NAME | DATE |
|---|---|---|---|---|
| A. S. EGGLESTON | 020030 | 10/26/2010 | | |

STATE OF CALIFORNIA
NARRATIVE/SUPPLEMENTAL                                                    PAGE 9 OF 10

| DATE OF INCIDENT | TIME | NCIC NUMBER | OFFICER I.D. | NUMBER |
|---|---|---|---|---|
| 10/26/2010 | 1650 | 9575 | 020030 | 2010-10-0372 |

1  STATEMENTS (CONTINUED):

2  Passenger #1 (Welbourn) was contacted by me and related in essence the following: I was

3  sitting in the right front passenger seat of Moore's vehicle as we traveled northbound on I-5 in the

4  #3 lane at 35-40 mph. Traffic at the time was heavy. We were headed to SR-118 westbound

5  when I heard Moore say "Oh my God!" I didn't see anything before the collision. After the

6  collision we tried to exit off the freeway with the other involved car, but it didn't exit with us. Moore

7  got behind the car and read the license plate to me as I wrote it down. We got off the freeway at

8  Mission Blvd.

9

10  OPINIONS AND CONCLUSIONS:

11  SUMMARY:

12  Party #2 (Moore) was driving Vehicle #2 (Lexus) northbound on I-5 in the #3 lane at 35 mph and

13  was north of Sheldon St. Party #1 (Flores) was driving Vehicle #1 (Nissan) northbound on I-5 in

14  the #3 lane at a speed greater than 35 mph and was approaching the rear of V-2. P-1 was driving

15  at an unsafe speed for traffic conditions. The front of V-1 struck the rear of V-2. After the collision

16  P-1 fled the scene. P-2 followed V-1 northbound until Mission Blvd. where she exited the freeway

17  and waited for CHP.

18

19  AREA OF IMPACT (A.O.I.):

20  A.O.I. #1 (Vehicle #1 vs. Vehicle #2) was located approximately 500 feet north of the north road

21  edge of Sheldon St. and 28 feet west of the east road edge of I-5 northbound.

22

23

24

25

26

27

28

| PREPARED BY | I.D. NUMBER | DATE | REVIEWER'S NAME | DATE |
|---|---|---|---|---|
| A. S. EGGLESTON | 020030 | 10/26/2010 | | |

| STATE OF CALIFORNIA NARRATIVE/SUPPLEMENTAL | | | PAGE 10 OF 10 | |
|---|---|---|---|---|
| DATE OF INCIDENT 10/26/2010 | TIME 1650 | NCIC NUMBER 9575 | OFFICER I.D. 020030 | NUMBER 2010-10-0372 |

1  **CAUSE:**

2  Party #1 (Flores) driving Vehicle #1 (Nissan) caused this collision by violating the following:

3

4  22350 V.C. No person shall drive a vehicle upon a highway at a speed greater than is reasonable

5  or prudent having due regard for weather, visibility, the traffic on, and the surface and width of, the

6  highway, and in no event at a speed, which endangers the safety of persons or property.

7

8  An associated factor to this collision was Party #1 (Flores) driving Vehicle #1 (Nissan) in violation

9  of the following Vehicle Code section:

10

11  20001      Duty to Stop at Scene of Accident

12  (a)      The driver of a vehicle involved in an accident resulting in injury to a person, other than

13          himself or herself, or in the death of a person shall immediately stop the vehicle at the

14          scene of the accident and shall fulfill the requirements of Sections 20003 and 20004.

15

16  • The above opinions and conclusions are based on the statements and physical evidence.

17

18  **RECOMMENDATIONS:**

19  I recommend that a copy of this report be forwarded to the Distrecit Attorney's Office for review and

20  the following charges be filed against Martha Eliza Artiga Flores.

21

22  20001(a)      Duty to Stop at Scene of Accident (Felony)

| PREPARED BY A. S. EGGLESTON | I.D. NUMBER 020030 | DATE 10/26/2010 | REVIEWER'S NAME | DATE |
|---|---|---|---|---|

EXHIBIT "F"

**Safeco** Insurance.

Member of Liberty Mutual Group

utomatic Deduction Notice

REBECCA MOORE

| | |
|---|---|
| Deduction Date | 07/22/10 |
| Deduction Amount | $351.08 |
| Account Number | 7114-2013264 |
| Statement Date | 06/27/10 |

## Account Activity

| Date | Description | Amount |
|---|---|---|
| 04/27/10 | Previous balance | $700.17 |
| 05/23/10 | Automatic deduction payment - Thank you! | 351.09 - |
| 06/27/10 | Installment fee | 2.00 |
| 06/27/10 | Current balance | $351.08 |

☎ Contact Us

GREG SCEALF INSURANCE AGY INC
Agent Telephone        (865) 694-9788

24-Hour Claims        1-800-332-3226
Manage My Account        www.safeco.com

## Billing Detail

| Description | Bill Plan | Balance | Deduction |
|---|---|---|---|
| Fire policy OF2O13264 effective 01/22/10 - 01/22/11 | 4-Pay | $349.08 | $349.08 |
| *11420 HICKORY SPRINGS DR* | | | |
| Installment fee | | 2.00 | 2.00 |
| | TOTAL | $351.08 | $351.08 |

 Because of your bill schedule your payment amount this month will be $ 351.08.

2874/006031 APNWZ 2874

SAFECO INSURANCE
GREG SCEALF INSURANCE AGY INC
8609 KINGSTON PIKE STE 201
KNOXVILLE, TN 37923-5103

Account Number 7 114-2013264

Bank account updates and other changes must be received at least one week prior to a scheduled deduction. Make changes at www.safeco.com or mail this form to:

SAFECO INSURANCE
PO BOX 66521
SAINT LOUIS MO 63166-6521

000038 1 SP 0.440 2874/033316/006031 001 01 APNWZ
REBECCA MOORE
21200 HITTRODGE ST
APT 1132
WOODLAND HILLS   CA  91303

☐    Please change my bank account information using the attached voided check

☐    Please change my monthly deduction day to the _____ day of the month



Please do not mail a payment. The deduction amount will be deducted from your bank account.

| Billing[1] Plan | 6-Month Policy | 12-Month Policy | Billing Frequency |
|---|---|---|---|
| Full Pay | ✓ | ✓ | The full premium is paid at the beginning of the term with no installment fee |
| 2-Pay | ✓ | ✓ | 6-Month Policy: 2 installments approximately 2 months apart<br>12-Month Policy: 2 installments approximately 5 months apart |
| 4-Pay | | ✓ | 4 installments at approximately 60 day intervals |
| Monthly | ✓ | ✓ | Monthly installments for the policy term |

## Other Payment Methods

- You may change your payment method by visiting www.safeco.com or by contacting your agent.
- Automatic Deduction payments are deducted from your checking or savings account. To choose this payment method, complete the authorization form below and return it with your check or visit www.safeco.com.
- Recurring Credit Card payments are charged to the debit card or credit card you specify. To choose this payment method, visit www.safeco.com.
- Automatic Deductions and Recurring Credit Card payments will continue, including at policy renewal, unless you change your payment method.

## Manage Your Account on www.safeco.com

- As a registered user, you can:
  - Make a payment with a check or a debit or credit card
  - Sign up for automatic deduction or recurring credit card
  - Update your bank, debit card or credit card information
  - Change your billing plan, payment method or due date

## Fees

- The installment fee varies by payment method, state and policy type. See your policy Declarations page for specific information about installment fees.
- If we receive your payment after the due date, you may be charged a late fee[2] of up to $10.00. Late payments may affect your future premiums, your coverage or continuation of your policy.
- If your payment is not honored by your bank, you may be charged a returned item fee of up to $25.00.

## Payment Application

- Payments will be applied to the Amount Due. If you pay more than the Amount Due, we will credit the overpayment to your next bill. To have some or all of a payment applied in another way, please contact your agent.
- Payments or credits received will be applied to your account and may be used to pay other balances due. Contact your agent to receive a refund check for any policy credits.
- All policies contributing to the amount due may be cancelled or expired if the amount due is not paid, or is only partially paid.
- Late payments may result in changes to future bills for the entire account. In some cases, if a payment is received 20 or more days after the due date, you will be billed for an amount equal to two installments on your next bill.

## Cancellation Procedures

- If you need to cancel a policy, please contact your agent.
- Billing options may be limited for policies that are reissued following a lapse in coverage.
- Unpaid premium on cancelled policies may be subject to credit reporting.

## Combined Billing

- You may combine your Safeco personal insurance policies on one billing account.[3] Your account will have one due date, chosen by you. Each month any amounts due for each policy will be combined for one amount due.
- To add or remove any policies on a billing account please contact your agent.

1. Not all billing plans are available in all states or for all products. If the billing plan for a policy on the front of this notice is printed with a # sign, installments will be billed approximately 3 months apart. Additional billing plans may be available in Florida. Contact your agent for more information.   2. Late fee exceptions in certain states for certain products. Contact your agent for more information.   3. Except California Earthquake Authority policies and policies paid by a mortgage company.

OC-522/EP 05/10

## Automatic Deduction Authorization

I authorize Safeco to initiate deductions from my bank account when payments are due for my Safeco account. I authorize the financial institution ("bank") listed on the enclosed check to accept the deductions initiated by Safeco.

I make this authorization subject to the following conditions:

- Safeco may deduct payments from my bank account ON or AFTER the _____ of the month.
- Safeco must notify me about the amount of the first deduction and whenever the deduction amount changes.
- I have the right to recover the amount of any erroneous Safeco deduction, either by check or as a credit to my account.
- I have the right to terminate this payment option or change my payment option or bank information by notifying Safeco. I understand that to be effective, Safeco must receive my notice at least one week prior to a scheduled deduction.
- Deductions should be made from the bank account listed on the enclosed check to pay my current bill.

I attest that I am authorized to sign checks drawn on the bank account listed on the enclosed check to pay my current bill.

Signed _____     Date _____

EXHIBIT "G"



P O Box 2460
Glen Allen, VA 23058
Office (804) 217-7322
Fax (800) 864-0084
Toll Free (800) 394-8642, Ext 322
hallen@alfaalc.com

June 22, 2010

Rebecca Moore
21200 Hittrodge St. Apt # 1132
Woodland Hills, CA 91302

RE:

> Our Insured  : Rebecca Moore
> Claim #      : 39824
> Date of loss : 01-05-2010

Dear Ms. Moore

This letter is to advise you that Alfa Alliance Insurance Corporation reserves all rights and defenses which it has in conjunction with policy # HOT 0304785-02 issued to you.

Any activity on our part by way of investigation or settlement which we may undertake or any defense which we may undertake on your behalf arising out of any legal action, or actions instituted against you does not constitute a waiver of our rights.

We are reserving our right to later disclaim any obligation under the policy and assert a defense of no coverage under the policy for the following reasons:

> 1. Failure to give us or our agent prompt notice of loss; and
> 2. Failure to give the police prompt notice of loss involving a crime.

Finally, for the above mentioned and for other good and valid reasons, we will avail ourselves of these and any other policy defenses which may exist now or may arise in the future.

Please contact us at the above listed number should you have any questions or concerns.

Sincerely,

Hershel Allen
Claim Representative
Alfa Alliance Corporation

## PROOF OF SERVICE

STATE OF CALIFORNIA          )
                             )§
COUNTY OF LOS ANGELES        )

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My present business address is 16501 Ventura Boulevard, Suite 610, Encino, California 91436.

On **October 3, 2013**, I served a true and correct copy of the document described as **NOTICE OF REMOVAL** on the interested parties, as follows:

Laurence H. Mandell, Esq.
The Mandell Law Firm
19400 Business Center Drive
Suite 102
Northridge, California 91324
Telephone Number:  (818) 886-6600
Facsimile Number:   (818) 772-9739
Attorneys for Plaintiffs, Rebecca Moore and Lupe Welbourn

☒  **BY UNITED STATES POSTAL SERVICE:**  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the United States Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.

**BY FACSIMILE TRANSMISSION:**  By use of facsimile machine telephone number (818) 784-0176, in accordance with *Code of Civil Procedure* §1013(e) and California Rules of Court 20008(e), to the within parties at the facsimile number(s) indicated.  This transmission was reported as complete and without error, and a copy of the transmission report which was issued by the transmitting facsimile machine is attached to the original hereof.

☒  (**ELECTRONIC NEF SERVICE**)   Via the Court's Electronic NEF system which constitutes service pursuant to the Federal Rules of Civil and Criminal Procedure for all attorneys who have consented to electronic service.

☒  (**FEDERAL**)    I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on October 3, 2013, at Encino California.

_Cheryl C. Crowley_
Cheryl C. Crowley

LEGAL_US_E # 85380570.2                    -4-

NOTICE OF REMOVAL